IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Brief February 13, 2012


JOHN VAN ZYLL AND ANN FURLONG
v.
PHIL MITCHELL


Appeal from the Chancery Court for Roane County
No. 15292    Frank V. Williams, III, Chancellor

---

No. E2011-00489-COA-R3-CV-FILED-JULY 17, 2012

---


This appeal involves a dispute between neighbors. Plaintiffs live in a home next door to the defendant neighbor. The defendant neighbor embarked on a campaign of harassment that included, among other things, blasting an air horn in the wee hours on intermittent nights. The air horn blasts occurred on over forty nights. The plaintiffs filed the instant lawsuit against the noisome neighbor, seeking injunctive relief and compensatory damages. Summonses were issued on two occasions, but no return of summons was filed with the trial court. The defendant neighbor wrote a *pro se* letter to the trial court, acknowledging receipt of a notice of hearing, but no other papers, and stating that he would not appear at the hearing. After the hearing, the trial court issued an injunction and awarded a default judgment for compensatory damages to the plaintiffs. The defendant neighbor then filed a Rule 60.02 motion to set aside the judgment, based on failure to serve process. This motion was granted. Pursuant to the defendant neighbor's motion, the trial court then dismissed the complaint. The plaintiffs now appeal, arguing that the defendant neighbor's *pro se* letter constituted an appearance and that the trial court erred in setting aside the default judgment and dismissing the complaint. We affirm.


**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and J. STEVEN STAFFORD, J., joined.

Kent Booher, Lenoir City, Tennessee for Plaintiff/Appellants John Van Zyll and Ann Furlong

Joe Costner, Maryville, Tennessee for Defendant/Appellee Phil Mitchell

# OPINION

## FACTS AND PROCEEDINGS BELOW

Plaintiff/Appellants John Van Zyll and Ann Furlong, and Plaintiffs Marvin Stacy and Paula Furlong[1] moved into a home in a neighborhood in Ten Mile, Roane County, Tennessee. The Plaintiffs' new abode was next door to the home occupied by Defendant/Appellee Phil Mitchell ("Mitchell"). Alas, the Plaintiffs were not destined to have a peaceable relationship with their new neighbor.[2]

After discord arose between the Plaintiffs and Mitchell, the Plaintiffs allege that Mitchell began a series of stunts calculated to upset and antagonize. Mitchell's actions included shooting a paintball gun at the Plaintiffs' house, fence, and personal property; kicking the fence separating the properties during the night in order to provoke the Plaintiffs' dogs; making threatening remarks to third parties about the Plaintiffs; and on one occasion even aiming a gun at Plaintiff Van Zyll. Most notably, from August 2004 through March 2005, Mitchell disrupted the Plaintiffs' sleep over forty times by blasting an air horn[3] intermittently in the predawn hours.[4]

---

[1]Plaintiffs Marvin Stacy and Paula Furlong are not parties to this appeal.

[2]The facts are taken from the Plaintiffs' complaint and pleadings. For purposes of the appeal, we assume the truth of the Plaintiffs' allegations.

[3]An air horn is a powerful pneumatic horn which produces sound by means of compressed air. Webster's Third New International Dictionary (1993). Air horns are used by large trucks and diesel locomotives and at large sporting events.

[4]The Plaintiffs stated that they began keeping a record of Mitchell's air horn blasts. The complaint alleges that the blasts occurred as follows:

> August 7, 2004, 3:30 a.m. one blast
> August 27, 2004, 1:19 a.m. one blast
> August 29, 2004, 1:47 a.m. one blast
> September 8, 2004, 1:47 a.m. one blast
> September 13, 2004, 1:00 a.m. one blast
> November 4, 2004, 7:55 a.m. one long blast
> November 24, 2004, 11:29 p.m. one blast
> November 29, 2004, 2:55 a.m. one blast
> December 4, 2004, 3:30 a.m. one blast
> December 9, 2004, 7:55 p.m. two blasts
> December 16, 2004, 3:15 a.m. three blasts

(continued...)

On May 25, 2005, the Plaintiffs were finally driven to file the instant lawsuit against Mitchell in the Chancery Court for Roane County, Tennessee.[5] The complaint alleges that Mitchell's conduct "caused Plaintiffs to lose sleep, become agitated, and have trouble concentrating at work."[6] Anticipation of the erratic dead-of-night air horn blasts "caused the Plaintiffs to be nervous and affected the Plaintiffs' enjoyment of their home." The complaint sought injunctive relief, compensatory damages, attorney fees, and court costs. A motion for temporary injunction was filed the same day as the complaint.

The complaint includes a certificate of service by Plaintiffs' counsel, stating that a copy of the complaint was mailed to Mitchell on the day the complaint was filed. The record does

---

[4](...continued)
> December 18, 2004, 4:30 a.m. one blast
> December 22, 2004, 2:34 a.m. four or five blasts
> December 27, 2004, 3:18 a.m. three blasts
> December 31, 2004, 3:11 a.m. three blasts
> January 4, 2005, 9:53 p.m. one blast
> January 10, 2005, 3:13 a.m. three blasts
> January 12, 2005, 2:54 a.m. one blast
> January 16, 2005, 1:57 a.m. one blast
> January 21, 2005, 12:32 a.m. one blast
> January 24, 2005, 12:14 a.m. three blasts
> January 30, 2005, 12:38 a.m. three blasts
> January 31, 2005, 11:32 a.m. three blasts
> February 1, 2005, 4:04 a.m. two blasts
> February 3, 2005, 3:24 a.m. three or four blasts
> February 8, 2005, 4:05 a.m. three blasts
> February 10, 2005, 1:46 a.m. two blasts
> February 12, 2005, 4:46 a.m. four long blasts
> February 13, 2005, 3:43 a.m. two long blasts
> February 17, 2005, 12:01 a.m. two blasts
> February 19, 2005, 3:52 a.m. three blasts
> February 21, 2005, 1:11 a.m. one long blast
> February 26, 2005, 3:50 a.m. five or six blasts
> March 4, 2005, 2:05 a.m. two blasts
> March 5, 2005, 4:09 a.m. five long blasts
> March 11, 2005, 1:05 a.m. ten blasts that sounded like a machine gun
> March 12, 2005, 12:55 a.m. four blasts
> March 12, 2005, 2:55 a.m. four more blasts
> March 13, 2005, 1:00 a.m. one long blast

[5]The record also indicates that, at some point, criminal charges were filed against Mitchell, arising out of the same conduct. The record does not indicate how the criminal charges resolved.

[6]The Plaintiffs also alleged that Mitchell's actions "caused Plaintiffs to be unable to sell their house."

not include a return receipt for this mailing. The same day, the court clerk issued a summons to Mitchell, with the clerk's handwritten notation that the summons was given to the attorney to be served by private process server. The record does not include a completed return for this summons.

After that, the record shows no activity in the case for almost two years. On April 26, 2007, three of the Plaintiffs filed a pleading with the somewhat unclear heading "Motion for Temporary Complaint to Enjoin and Abate a Nuisance." The body of this pleading indicates that it was intended as a motion. The motion alleged the same conduct by Mitchell, although interestingly it did not specify dates for Mitchell's actions. It asked the trial court to issue process against Mitchell and award the Plaintiffs injunctive relief and compensatory damages. The motion included a certificate of service stating that it had been mailed to Mitchell. A notice of a hearing on the motion was also filed and mailed to Mitchell.

The court clerk issued another summons, dated April 26, 2007, again with a handwritten notation by the clerk that the summons was given to the attorney to serve. As with the first summons, the record contains no completed return of service.

The hearing on the Plaintiffs' request for a temporary injunction took place as scheduled on April 27, 2007. Mitchell did not appear. Less than a month later, the trial court issued an order granting the injunction, enjoining Mitchell from "blowing an air horn, firing shots at Plaintiffs' home[,] and shooting a paintball gun at Plaintiffs' house and other property[,] and from behaving in a threatening and menacing manner towards Plaintiffs." The order stated that a further hearing would be held to determine the Plaintiffs' damages. A copy of the order was mailed to Mitchell.

On October 2, 2007, Mitchell mailed a letter to the trial judge. The letter stated:

> Dear Judge Williams,
>
> I have recieved [sic] no papers regarding the case mentioned in the attached notice and thus do not feel bound by the Chancery Court of Roane County to hire an attorney or to defend myself for the purpose of a "hearing" on October 12, 2007. Not being duly served I would hope that you would consider the attorneys pursuing this matter in malpractice. Having met you previously I have great respect for you and your court but believe that due process has not been carried out and that continuing (and past) proceedings are moot. Thank you and
>
> > Kind regards,
> > Phil Mitchell

Although it is referenced in Mitchell's letter, there is no indication in the record that any hearing was held on October 12, 2007. At any rate, Mitchell's *pro se* letter was filed in the trial court record on October 10, 2007.

On January 31, 2008, the trial judge sent a letter to the parties scheduling the case for March 7, 2008.[7] Apparently the hearing took place on March 7, 2008, as scheduled, and at the hearing, the Plaintiffs testified about their damages from Mitchell's conduct. Mitchell did not attend the hearing. A written order was not immediately entered, but the trial court's later order indicates that the trial judge issued an oral ruling at the hearing, finding that Mitchell's actions were intentional and awarding a total of $363,750 in compensatory and punitive damages and attorney fees.

Apparently this turn of events prompted Mitchell to hire an attorney. On March 27, 2008, Mitchell's attorney filed a motion to dismiss the Plaintiffs' lawsuit, citing no service of the complaint on Mitchell. The motion includes a certificate of service to Plaintiffs' counsel. The record reflects that no action was taken on Mitchell's motion, nor was the motion brought to the trial court's attention.

On July 23, 2008, the trial court's written order on the March 7, 2008 hearing was entered. The order, entitled "Final Judgment," awarded damages to the Plaintiffs in the amount noted above. The only lawyer who signed the "Final Judgment" order was Plaintiffs' counsel, and the certificate of service indicates service to Mitchell, not to his attorney.

After Mitchell's attorney learned of the final judgment order, he filed a motion to set aside the judgment. The motion to set aside noted that Plaintiffs' counsel, Lisa Temple, had notice that Mitchell's attorney had appeared on his behalf, but in spite of this, she did not present the written order to Mitchell's counsel and caused the order to be sent to Mitchell himself instead of Mitchell's attorney. The motion sought to set aside the judgment for failure to comply with Rule 55 of the Tennessee Rules of Civil Procedure, which sets forth the required procedure for obtaining a default judgment. In the alternative, the motion sought to set aside the judgment under Rule 60.02 of the Tennessee Rules of Civil Procedure because Mitchell believed that he had not been properly served and thus was not obliged to appear. Finally, Mitchell's motion asked the trial court to dismiss the Plaintiffs' complaint. For reasons that are not entirely clear in the record, on the same date, Mitchell's counsel filed a second motion to set aside the judgment. The second motion cited Mitchell's previous motion to dismiss for failure of service of process, filed on March 27, 2008.

---

[7]The trial court's letter refers to resetting the hearing from March 11, 2008 to March 7, 2008, due to the trial court's scheduling conflict. However, the record does not include a prior notice for March 11, 2008.

The hearing on Mitchell's motions was scheduled for November 6, 2008. The day before the hearing, the Plaintiffs' attorney, Lisa Temple, filed a response to the motions. The response stated in part:

* * *

2. That numerous attempts were made to serve [Mitchell] with the Complaint according to the Tennessee Rules of Civil Procedure.

3. That [Mitchell] notified the Court *pro se* by letter dated October 2, 2007 that he had not been served with the Complaint in this cause.

4. That the Plaintiffs, through undersigned counsel, contacted the Court and inquired if [Mitchell's] *pro se* letter would be deemed an appearance and Answer by [Mitchell] in this cause.

5. That Chancellor Williams' assistant contacted undersigned counsel and indicated that the letter was deemed to be a responsive pleading in this cause and that the case could be set for trial.

Plaintiffs' attorney claimed she did not receive the first motion to dismiss, in which counsel appeared on Mitchell's behalf, and that she had been under the impression that Mitchell was continuing to represent himself.[8] The response included a certificate of service to Mitchell's counsel.[9]

Apparently the trial court held the hearing on Mitchell's motion as scheduled on November 6, 2008. Although the written order on the hearing was not entered until well over a year after the hearing, the trial court must have indicated at the hearing its intent to grant Mitchell's motion to set aside but to refrain from dismissing the complaint. Consequently, before the written order from the November 6, 2008 hearing was entered, Mitchell filed a Rule 12.02(6) motion to dismiss. The motion to dismiss recited that the Plaintiffs' complaint was filed in May 2005 and Mitchell was not served until November 21, 2008. As the Plaintiffs' complaint asserted only injuries to the person, Mitchell's motion argued that the complaint was time-barred under the one-year statute of limitations, Tennessee Code

---

[8]The Plaintiffs' response asserts that Mitchell had represented himself in several matters, including a jury trial.

[9]The certificate of service to Mitchell's attorney indicates that attorney Temple placed a copy of the response in the mail to Mitchell's attorney on November 5, 2008. The hearing was scheduled for the next day, November 6, 2008, so it is unclear whether Mitchell's attorney received the response in advance of the hearing.

Annotated § 28-3-104. The motion cited Rule 3 of the Tennessee Rules of Civil Procedure,[10] arguing that the Plaintiffs failed to obtain issuance of process within one year of the filing of their complaint, and thus the filing of the complaint did not toll the running of the statute of limitations.

On August 24, 2010, the written order for the November 6, 2008 hearing was finally entered; the order was made effective *nunc pro tunc* to November 6, 2008. This order set aside the injunction against Mitchell and the judgment for damages, based on the trial court's finding that Mitchell "has not been properly served with the Complaint according to the Tennessee Rules of Civil Procedure." After this order was entered, Mitchell apparently re-filed his Rule 12.02(6) motion to dismiss. Thereafter, the matter was evidently stayed for a period of time, awaiting resolution of criminal charges lodged against Mitchell based on the same course of conduct.

Mitchell's motion to dismiss was finally heard on February 3, 2011. By this time, the Plaintiffs were represented by new counsel, Kent Booher, and the Plaintiffs' prior attorney, Lisa Temple, was offered as a witness at the hearing on her attempts to serve the complaint on Mitchell.

At the hearing, the Plaintiffs' attorney remarked that the trial court "specifically, when it entered the judgment for money damages for these people, specifically found that the letter from Mr. Mitchell was an answer."[11] The Plaintiffs' attorney asked the trial judge not to "change[] [his] mind" and dismiss the lawsuit. Unpersuaded by this entreaty, the trial court found that Mitchell's letter raised the issue of failure of service of process, and there was no return in the record showing successful service on Mitchell.

---

[10]Rule 3 states in relevant part:

> If process remains unissued for 90 days or is not served within 90 days from issuance, regardless of the reason, the plaintiff cannot rely upon the original commencement to toll the running of a statute of limitations unless the plaintiff continues the action by obtaining issuance of new process within one year from issuance of the previous process or, if no process is issued, within one year of the filing of the complaint.

Tenn. R. Civ. P. 3 (2011).

[11]The record does not include a transcript of the March 2008 hearing, at which damages were awarded to the Plaintiffs, so we cannot know of any oral remarks made by the trial judge at that hearing. However, the written "Final Judgment" from that hearing includes no such finding.

On March 1, 2011, the trial court entered its order, which found that Mitchell was never properly served with the May 2005 complaint and dismissed the complaint on that basis. Plaintiffs John Van Zyll and Ann Furlong now appeal.

### ISSUES ON APPEAL AND STANDARD OF REVIEW

On appeal, Plaintiffs Van Zyll and Furlong contend that the trial court "erred by vacating the default judgment and dismissing the lawsuit for failure to obtain service of process on [Mitchell] after having already found service of process was waived by appearance of [Mitchell] before the court." Separating this into two issues, we will consider first whether the trial court erred in granting Mitchell's Rule 60.02 motion to set aside the judgment in favor of the Plaintiffs. We will then consider whether the trial court erred in granting Mitchell's motion to dismiss.

A trial court's decision to set aside a default judgment will not be reversed on appeal absent an abuse of discretion. *Pryor v. Rivergate Meadows Apartment Assocs.*, 338 S.W.3d 882, 885 (Tenn. Ct. App. 2009). An abuse of discretion occurs when either an incorrect legal standard is applied or a decision is reached that is against logic or reasoning. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001). The appellate court is not permitted to substitute its own judgment for that of the trial court and must uphold the trial court's ruling "so long as reasonable minds can disagree as to the propriety of the decision made." *Id*.

The trial court's dismissal of the Plaintiffs' complaint was pursuant to Mitchell's Rule 12.02(6) motion to dismiss. Rule 12.02 of the Tennessee Rules of Civil Procedure provides that if "matters outside the pleadings are presented to and not excluded by the court," then a motion to dismiss shall be treated as a motion for summary judgment. Tenn. R. Civ. P. 12.02 (2011); *see also Jones v. Vasu*, 326 S.W.3d 577, 580 (Tenn. Ct. App. 2010). Mitchell's motions were predicated on service of process and necessitated consideration of matters outside of the Plaintiffs' complaint. Therefore, on appeal, we treat the trial court's order as a grant of summary judgment in favor of Mitchell.

Summary judgment is warranted when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04 (2011). We review the trial court's conclusions of law *de novo* without a presumption of correctness. *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996). Accordingly, we review the grant of a motion for summary judgment *de novo* without a presumption of correctness. *Christenberry v. Tipton*, 160 S.W.3d 487, 491 (Tenn. 2005) (citing *Webber v. State Farm Mut. Auto. Ins. Co.*, 49 S.W.3d 265, 269 (Tenn. 2001)).

**ANALYSIS**

**Order Setting Aside Judgment**

Plaintiffs first argue that the trial court erred in granting Mitchell's Rule 60.02 motion to set aside the default judgment against Mitchell. They initially contend that Mitchell did not raise failure of service of process as a defense in his *pro se* letter to the court, and therefore, he waived the defense. We respectfully disagree. While Mitchell's letter does not use the term "service of process," it states: "I have recieved [sic] no papers regarding the case mentioned in the attached notice [of hearing] and thus do not feel bound . . . to hire an attorney or to defend myself. . . ." As a communication to the court from a self-represented litigant, we agree with the trial court that this sufficiently raises the issue of service of process. Apparently Plaintiffs' prior counsel saw it this way as well; in Plaintiffs' response to Mitchell's motion to set aside, Plaintiffs' former counsel, Ms. Temple, recounts that Mitchell "notified the Court *pro se* by letter dated October 2, 2007 that he had not been served with the Complaint in this cause."

In their appellate brief, the Plaintiffs next argue: "Assuming for argument that Mr. Mitchell's letter raised the issue of sufficiency of process, his failure or refusal to attend the scheduled court hearing for the purpose of advancing that position constitutes abandonment of that position. Rule 8.04, Tenn. R. Civ. P." Frankly, this contention leaves us perplexed, as Rule 8.04 has nothing to do with the Plaintiffs' argument.[12] The Plaintiffs cite no other authority to support this assertion. This argument is without merit.

In their appellate brief, the Plaintiffs next state: "The Chancellor having apparently changed his mind about the import of Mr. Mitchell's letter, set aside the default judgment." The Plaintiffs seem to contend that the trial court first found that Mitchell's letter constituted an appearance and a waiver of the defense based on service of process and imply that the Plaintiffs refrained from further efforts to serve process on Mitchell in reliance on the trial court's finding. The Plaintiffs appear to claim unfair surprise at the trial court's later finding that Mitchell's letter in fact asserts failure of service of process.

---

[12]Rule 8.04 states:

> Averments in a pleading to which no responsive pleading is required or permitted shall be taken as denied or avoided. Averments in a pleading to which a responsive pleading is required are admitted when not denied in the responsive pleading. . . .

Tenn. R. Civ. P. 8.04 (2011).

This argument finds no support in the record presented to this Court. The trial court's orders – granting Plaintiffs the requested injunction and awarding a judgment for damages – say nothing about Mitchell's letter or, for that matter, about service of process. The only support for the Plaintiffs' assertion that the trial judge "changed his mind" about Mitchell's letter is in the Plaintiffs' statements and pleadings, which is no support at all.[13]

The Plaintiffs next argue that Rule 60 relief should not be granted in favor of a movant whose actions are deliberate and calculated, citing **Day v. Day**, 931 S.W.2d 936, 939 (Tenn. Ct. App. 1996). The Plaintiffs contend:

> In this case, not only was [Mitchell's] action calculated, but given the delay between the entry of the judgment and the action to set it aside, the [Plaintiffs] were placed in the position where compliance with Rule 3, Tenn. R. Civ. P. was impossible.
>
> * * *
>
> At the time the Chancellor set aside the default judgment (August 2008), reliance on Rule 3 was utterly impossible. If the Chancellor's decisions are allowed to stand, [Plaintiffs'] time to refile their complaint under the applicable statute of limitations has long run. Under no circumstances could such an outcome be considered just, as required by Rule 60.02.

The Plaintiffs' argument is upside down, as can be seen by looking at **Day v. Day**, cited by the Plaintiffs. In **Day**, the trial court awarded alimony to the wife in its final decree. **Day**, 931 S.W.2d at 938. Instead of appealing the final decree, the obligor husband waited 14 months and then filed a Rule 60.02 motion to alter or amend the award of alimony. **Id.** When this motion was denied, the husband appealed. **Id.** The appellate court declined to reverse the denial of the husband's Rule 60.02 motion because the husband had made a deliberate decision not to appeal the final decree. **Id.** at 940.

Here, the "calculated" choice was that of the Plaintiffs. Plaintiffs' counsel certainly knew that there had been no effective service on Mitchell, as there was no return of service in the trial court record. There was not even a return receipt in the record for the copy of the

---

[13] The Plaintiffs' response to Mitchell's motion to set aside said that the trial court's unnamed "assistant" told counsel that Mitchell's letter was "a responsive pleading." At the hearing on the motion to dismiss, Plaintiffs' new counsel claimed that the trial court had "found that the letter from Mr. Mitchell was an answer." Neither of these references indicate that the trial court found that Mitchell had waived failure of service of process as a defense.

complaint that was allegedly mailed to Mitchell.[14] Nevertheless, the Plaintiffs' counsel forged ahead, apparently in the hopes that Mitchell, representing himself, would either not assert the defense of failure of service of process or would inadvertently waive it. This calculated risk did not pay off.

Once the trial court below realized that there was a significant issue regarding service of process on Mitchell, it granted Mitchell's Rule 60.02 motion to set aside the judgment but did not immediately dismiss the complaint. This was the only prudent action under the circumstances. We cannot conclude that the trial court abused its discretion in granting Mitchell's Rule 60.02 motion to set aside the default judgment.

### Dismissal of Complaint

The Plaintiffs also contend that the trial court erred in dismissing the lawsuit for failure to obtain service of process on Mitchell. In their brief, the Plaintiffs do not argue that they in fact served process on Mitchell. Instead, they argue that, by virtue of his letter, Mitchell made a "voluntary appearance in the case" and "waived any defects in service of process." The Plaintiffs contend: "The failure of [Mitchell] to challenge insufficiency of process in accordance with Rule 8.03, Tenn. R. Civ. P. constitutes a waiver of the matter if it is raised by motion. *Faulks v. Crowder*, 99 S.W.3d 116, 125 (Tenn. Ct. App. 2003)."

We must respectfully disagree with this argument as well. First, as discussed above, we agree with the trial court's holding that Mitchell's letter sufficiently raised the issue of failure of service of process and does not constitute a waiver by appearance.

Second, the Plaintiffs' reliance on Rule 8.03 and *Faulks v. Crowder* is misplaced. In *Faulks*, the defendant filed an answer that did not raise insufficiency of service of process as a defense. *Faulks*, 99 S.W.3d at 125-26. Later, after the statute of limitations had run, the defendant filed a motion that raised the issue. *Id.* The appellate court held that, under those circumstances, the defendant had waived the affirmative defense of insufficiency of service of process. *Id.* at 125-26.

In contrast to *Faulks*, the Plaintiffs in the case at bar can hardly claim that they were sandbagged. They knew that they had not effected service of process on Mitchell; there was no completed return of process in the file.

---

[14]At any rate, service by mail cannot be the basis for entry of default judgment except in specified, limited circumstances. Tenn. R. Civ. P. 4.04(10).

If the facts alleged in the complaint are true, we have much sympathy for the Plaintiffs' situation. However, sympathetic facts are no substitute for service of process. In the absence of service on Mitchell, the trial court could not allow the Plaintiffs' lawsuit to proceed, and neither can we.

## CONCLUSION

The decision of the trial court is affirmed. Costs on appeal are taxed against Plaintiff/Appellants John Van Zyll and Ann Furlong, and their surety, for which execution may issue if necessary.

_____
HOLLY M. KIRBY, JUDGE